AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
MONE JO FORD

Defendant(s)

Case No. 3:26-mj-1303-SJH

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 27, April 6, April 10, 2026 in the county of Duval in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(B) | Distribution of a controlled substance |
| 18 U.S.C. § 2 | Aiding and Abetting |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

David S. Ong, Special Agent, FDLE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/22/2026

[signature]
*Judge's signature*

City and state: Jacksonville, Florida

Samuel J. Horovitz, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Davd S. Ong, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1. I am a Special Agent with the Florida Department of Law Enforcement (FDLE) and have been a law enforcement officer for over 13 years and served as a full-time member of the St. Johns County Sheriff's Office (SJSO) since 2012. For over four years, between 2018 and 2022, I was assigned to the SJSO Special Investigations Unit (SIU) which specializes in narcotics related investigations. As well as attending the Police Academy, I have attended numerous classes including: asset forfeiture, writing and serving search warrants, interview and interrogation in narcotics cases, narcotics and dangerous drugs, intermediate mobile surveillance, interviews and interrogations, interview and articulation, interview and interrogation master class, criminal intelligence analysis essentials, field training officer, tactical narcotics techniques, line supervision, hotels/motels and parcel/freight carrier course, red flags course, TruNarc basic operator, opioid death investigations, Cellebrite Certified Operator (CCO) and Cellebrite Certified Physical Analyzer (CCPA), Immigration and Customs Enforcement (ICE ERO) delegated immigration officer, exigency PING certification, Florida Department of Law Enforcement Special Agent Training Academy and Florida Department of Law Enforcement field training agent course.

2. I have been the case agent on, and assisted with, multiple search warrants, drug investigations, and conducted surveillance on suspected narcotics violators. I have posed as a drug buyer and handled numerous confidential informants.

Since 2021, I have also served as a FDLE Task Force Agent (TFA) for the Tri-County Narcotics Task Force, prior to becoming a full-time Special Agent in 2022 with FDLE at the Tri-County Narcotics Task Force. I am familiar with the methods of operation of drug buyers and sellers, and with the slang or coded language used to describe drug transactions.

3. I hold a bachelor's degree in criminology and criminal justice from the University of Maryland at College Park and a master's degree in management and leadership from Webster University.

4. I make this affidavit in support of a criminal complaint charging Mone Jo FORD with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2, distributing, and aiding and abetting the distribution of, 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine. This affidavit does not include all facts and evidence known to me but rather contains facts and evidence sufficient to support the issuance of a criminal complaint and arrest warrant.

## PROBABLE CAUSE

5. Based on the facts and observations contained in this affidavit, there is probable cause to believe that FORD distributed, and aided and abetted the distribution of, 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine in the Middle District of Florida on or about March 27, April 6, and April 10, 2026. Therefore, I respectfully request the issuance of a criminal

complaint charging FORD for violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.

6. This case began with an FDLE confidential source identifying a source of supply for methamphetamine. The confidential source (hereafter "CS") is cooperating with law enforcement in relation to pending criminal charges, is not a convicted felon, and has no known prior convictions involving crimes of dishonesty. The CS is located in the Middle District of Florida.

*March 27, 2026, Shipment of Methamphetamine by FORD*

7. Based upon cellular phone text messages that I have reviewed, I know that on March 10, 2026, via cellular phone text message, the CS ordered one-half pound of methamphetamine from FORD and instructed FORD to send the drugs to a controlled location in the Middle District of Florida. FORD told the CS via cellular phone text message to utilize a Cash App account, "$WilliamHughes27" for a "William Hughes" and instructed the CS via cellular phone text message to pay $1,400 via the Cash App account. I have subpoenaed records from Cash App for the username "$WilliamHughes27" but have not received a response as of the date of this affidavit.

8. I reviewed cellular phone text messages between the CS and FORD which show that on March 26, 2026, FORD provided the CS with a UPS tracking number and told the CS the package would arrive at the controlled location in the Middle District of Florida on March 27, 2026.

9. On March 27, 2026, I intercepted the package ordered on March 10, 2026, at the controlled location in the Middle District of Florida. With the assistance of HSI Special Agent Tanner Oglesbee and his use of law enforcement databases, I identified the shipping location where the package originated as Go-Ship, 8412 Winkler Drive, Houston, Texas 77017 ("Go-Ship"). The package had the same tracking number that FORD provided to the CS on March 26, 2026.

10. I field tested the suspected methamphetamine and it tested positive for the presence of methamphetamine. The suspected methamphetamine also weighed 226.4 grams, without packaging. The suspected methamphetamine was sent to FDLE laboratory for drug chemistry and weight. Those lab results are pending.

11. I believe that FORD shipped the methamphetamine received in the Middle District of Florida on March 27, 2026, because I have reviewed CCTV footage that I obtained from the clerk at the Go-Ship location. That footage, which was recorded on March 26, 2026, shows FORD shipping a package from the Go-Ship location which is similar in appearance to the package received in the Middle District of Florida on March 27, 2026. I identified FORD in the footage because he has distinct tattoos on his neck and throat, and a tattoo of the letter "A" on the right inner bicep and is a Caucasian male. These markings and his appearance in the footage match booking photos for FORD which I obtained from law enforcement databases.

***April 6, 2026, Shipment of Methamphetamine by FORD***

12. I reviewed cellphone messages on April 2, 2026 related to another transaction for methamphetamine. The CS and FORD came to a different arrangement of how to ship and pay for the methamphetamine. The text messages revealed that FORD agreed to ship one pound of methamphetamine for a lower cost in two different shipments. CS agreed to pay after receiving the tracking number. FORD provided a tracking number and instructed the CS via cellular phone text message to pay $1,200 per shipment of methamphetamine via the Cash App account "$mandaaa5959".

13. On April 6, 2026, I intercepted the package ordered on April 2, 2026 at the agreed upon controlled location in the Middle District of Florida. The package was shipped from the Go-Ship location in Texas. The package had the same tracking number FORD provided to the CS on April 2, 2026. I field tested the suspected methamphetamine, and it tested positive for the presence of methamphetamine and weighed 223.3 grams without packaging. The suspected methamphetamine was sent to FDLE laboratory for further testing. The lab results are pending.

14. I believe that FORD shipped the methamphetamine received in the Middle District of Florida on April 6, 2026 because I have reviewed CCTV footage obtained from the clerk at the Go-Ship location by HSI Special Agents in Houston, Texas. That footage, which was recorded on April 2, 2026, showed FORD shipping a package from the Go-Ship location that is similar to the package received in the Middle District of Florida on April 6, 2026. FORD was identifiable on the footage

because he has distinct tattoos which match booking photos for FORD that I obtained from law enforcement databases. Additionally, I subpoenaed records from Cash App for the username "$mandaaa5959" and reviewed the records that were provided. The account is registered to a person whose full name is known to law enforcement, referred to herein as Person A. Based upon my review of the Cash App records, I determined that on April 2, 2026, after the CS paid Person A $1,200 via Cash App using the username "$mandaaa5959," Person A paid the same amount to a person I believe to be FORD, listed in the Cash App transaction records as "Mone Ford."

*April 10, 2026, Shipment of Methamphetamine by FORD*

15. I reviewed text messages between the CS and FORD from April 8, 2026 and learned that the CS ordered the second one-half pound from FORD that the pair previously discussed on April 2, 2026, and asked FORD to send the drugs to the controlled location in the Middle District of Florida. FORD told the CS via cellular phone text message to utilize the Cash App account "$mandaaa5959" to deposit the $1,200. Cellular text messages that I reviewed show that on April 8, 2026, the CS sent FORD the agreed upon amount via Cash App to username "$mandaaa5959." FORD then provided the CS a UPS tracking number for a package to be shipped to the agreed upon controlled location in the Middle District of Florida.

16. On April 10, 2026, I intercepted the package ordered on April 8, 2026, at the agreed upon controlled location in the Middle District of Florida. The package was shipped from the Go-Ship location in Texas. The package had the same tracking

number that FORD provided to the CS on April 8, 2026. I field tested the suspected methamphetamine and it tested positive for the presence of methamphetamine and weighed 253.7 grams without packaging. The suspected methamphetamine was eventually sent to FDLE laboratory for drug chemistry and weight. The lab results are pending.

17. I believe that FORD shipped the April 10, 2026 shipment of methamphetamine because I have reviewed a report prepared by HSI Special Agent Denzel Washington. I learned that agents conducted physical surveillance of FORD in connection with the April 8, 2026, transaction. Special Agents from HSI Houston conducted surveillance at the Go-Ship location where thy identified FORD's vehicle, a black Jeep with a Texas license plate bearing number WST4491, registered to FORD. HSI Special Agents saw FORD entering the Go-Ship location and exiting the location. Special Agent Washington also obtained surveillance footage from the Go-Ship location on April 10, 2026. The footage shows FORD shipping the package I later intercepted.

18. Based upon a Galveston County Sheriff's Office report that I reviewed, I learned that late in the evening on April 10, 2026, in Texas City, Texas, deputies attempted to pull over a motorcycle which ran a red light and began fleeing from deputies at a high rate of speed. After wrecking the motorcycle and a short foot pursuit, the suspect, later identified as FORD, was apprehended. Clear plastic bags containing a white crystal-like substance were found in FORD's bag and a field test yielded a presumptive positive for methamphetamine. FORD was subsequently arrested on

numerous state charges in Texas including delivery of a controlled substance over 200 grams but under 400 grams, and unlawful possession of a firearm by a convicted felon. FORD was booked into the Galveston County Jail and his identity was confirmed.

## CONCLUSION

19. Based on the facts and observations contained in this affidavit, there is probable cause to believe that FORD distributed, and aided and abetted the distribution of, 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine in the Middle District of Florida on or about March 27, April 6, and April 10, 2026. Therefore, I respectfully request the issuance of a criminal complaint charging FORD for violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.

Respectfully submitted,

David S. Ong
Special Agent, Florida Department of Law Enforcement

Subscribed and sworn to before me on this 22 day of July 2026 in Jacksonville, Florida.

SAMUEL J. HOROVITZ
UNITED STATES MAGISTRATE JUDGE